# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:10cv156

| | |
|---|---|
| CTS CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | MEMORANDUM AND |
| ) | RECOMMENDATION |
| MILLS GAP ROAD ASSOCIATES; ) | |
| FREDERIC SLOSMAN; JOHN ) | |
| POWELL; and STANLEY H. ) | |
| GREENBERG, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** is before the court upon plaintiff's second Motion to Dismiss (#23), plaintiff's Memorandum of Law in Support (#24), defendants' second Response to Plaintiff's Motion to Dismiss Defendants' Counterclaims (#25), and plaintiff's Reply to Defendants' Memorandum (#26). In substance, the second Motion to Dismiss is identical to the first Motion to Dismiss; the first motion was procedurally denied as moot inasmuch as defendants' first Answer containing the counterclaims was stricken and amended, and defendants counterclaims paragraphs of the stricken answer. Taylor v. Abate, 1995 WL 362488, *2 (E.D.N.Y. 1995).[1]

---

[1] Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

Having carefully considered plaintiff's second Motion to Dismiss and reviewed the pleadings, the court enters the following findings, conclusions, and Recommendation.

## FINDINGS AND CONCLUSIONS

**I.  Background**

In this action, plaintiff seeks to enforce an agreement it allegedly made with defendants to share certain costs incurred by the Environmental Protection Agency (hereinafter "EPA") in the cleanup of trichloroethene (hereinafter "TCE") from the soil and groundwater of property, owned by a former subsidiary of plaintiff prior to 1987, and owned since that date by defendant Mills Gap Road Associates (hereinafter "MGRA").

In response to such claim, defendants have asserted two state-law counterclaims: a counterclaim for trespass; and a counterclaim for nuisance. As to their counterclaim of trespass, defendants allege that the "renewing trespass of the contamination has rendered Defendants' property useless and diminished its value." Amended Answer (#22), at ¶ 30. As to their claim of nuisance, defendants allege that "[t]he contamination which renews and spreads in the soil and groundwater on and around the Site substantially and unreasonably interferes with Defendants' ability to use and enjoy their property and is a renewing nuisance." Id., at ¶ 34.

**II.  Plaintiff's Motion to Dismiss the Counterclaims**

Plaintiff has moved to dismiss the counterclaims, contending that defendants have failed to allege cognizable claims and that such claims are barred by the applicable three-year statute of limitations and the ten-year statute of repose. Plaintiff's Memorandum of Law in Support (#24), at p. 2.

## III. Applicable Standard

Until recently, a complaint could not be dismissed under Rule 12(b)(6) unless it appeared certain that a plaintiff could prove no set of facts which would support its claim and entitle it to relief. Neitzke v. Williams, 490 U.S. 319 (1989); Conley v. Gibson, 355 U.S. 41 (1957). This "no set of facts" standard has been specifically abrogated by the Supreme Court in recent decisions.

First, in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Court held that the "no set of facts" standard first espoused in Conley, supra, only describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum adequate pleading to govern a complaint's survival." Id., at 563. The Court specifically rejected use of the "no set of facts" standard because such standard would improperly allow a "wholly conclusory statement of claim" to "survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Id., at 561 (alteration in original).

Post Twombly, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts in the complaint that "raise a right to relief above the speculative level." Id., at 555.

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .

Id. (second alteration in original; citation omitted). Further, a complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s] devoid of further factual enhancement." Id., at 557. Instead, a plaintiff must now plead sufficient facts to state a claim for relief that is "*plausible* on its face." Id., at 570 (emphasis added).

While the Court was clear in Twombly that Conley was no longer controlling, see Twombly, 550 U.S. at 563, and Felman Production Inc. v. Bannai, 2007 WL 3244638, at *4 (S.D.W.Va. 2007), it again visited the Rule 12(b)(6) pleading standard in Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937 (May 18, 2009). In Iqbal, the Court determined that Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Id., S.Ct., at 1949. The Court explained that, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" Id. (citing Twombly, supra; emphasis added). What is plausible is defined by the Court:

> [a] claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged.

Id. This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." Id. Thus, a complaint fall short of the plausibility standard where a plaintiff pleads "facts that are 'merely consistent with' a defendant's liability . . . ." Id. While the court accepts plausible factual allegations made in a complaint or counterclaim as true and considers those facts in the light most favorable to the party resisting dismissal, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

As reflected above in the discussion of the allegations of the counterclaims herein, the court has accepted as true all of the factual allegations contained in the counterclaims. As reflected below, the court has assumed the veracity of any well-pleaded factual allegations "and [will] then determine whether they plausibly give rise to an entitlement to relief." Id. (alteration added).

## IV. Discussion

### A. Counterclaim for Trespass

Under North Carolina law, the essential elements of a claim for civil trespass are: (1) that the plaintiff was in possession of real property at the time of trespass; (2) that defendant, without authorization, unlawfully entered such real property; and (3)

that plaintiff sustained damage as a result of the unlawful entry. Broughton v. McClatchy Newspapers, Inc., 161 N.C.App. 20, 32 (2003). Defendants argue that even though they have been in possession of the property since 1987, and that plaintiff has not committed or entered such property since such possession, plaintiff is still a trespasser because:

> the continuous spreading of the contamination until as late as 2007 constitutes a renewing trespass by Plaintiff. The presence of TCE in the soil and groundwater around the Site is a continuing trespass because it has continued patently and without interruption since it was discovered.

Response (#25), at p. 4 (citation omitted).

The problem with this argument is that defendants rely on case law concerning seepage of contaminants from an *adjoining* property to support their contention that the discovery of greater concentrations of contaminants emanating from their own property constitutes a renewing or continuous trespass by a prior owner of the same property. See Wilson v. McLeod Oil Co., Inc., 327 N.C. 491, 510-11 (1990). To satisfy the second element of a claim sounding in trespass, defendants must allege facts that could plausibly show "unlawful entry" at a time when plaintiff was in possession. Unlike contaminants that seep from property owned by an adjoining landowner, all of the contaminants in this case were on the property since it was purchased in 1987, which defendants appear to concede: "In fact, the contamination resulting from the operations of CTS on the Site from 1959 through 1986 and

particularly from the TCE, constitutes a renewing trespass." Amended Answer, at ¶ 29. They go on to argue that "contamination continues to make its way into soil and groundwater on and around the Site." Id. Taking such factual allegation as true, the spreading of contaminants within the property does not provide a basis for a jury finding that plaintiff has reentered the property. The undisputed fact that the EPA and/or state authorities have determined that the levels of such contaminants are greater than previously believed is not relevant to the element of unlawful entry.

Finding that defendants' reliance on a theory of renewing or continuing trespass is misplaced, the undersigned must recommend that this counterclaim be dismissed inasmuch as defendants have failed to allege plausible facts under Rule 12(b)(6) that would support each element of a claim for trespass. Further, inasmuch as defendants purchased the property from plaintiff in 1987, Amended Answer, at ¶ 3, the action is barred by the applicable three-year statute of limitation, and the ten-year statute of repose. N.C.Gen.Stat. § 1-52 (3) & (16).

**B.     Nuisance**

Defendants have also asserted a counterclaim for nuisance. To state a viable claim sounding in nuisance, defendants must allege plausible facts that would show that plaintiff unreasonably interfered with defendants' use and enjoyment of their property. Jordan v. Foust Oil Co., Inc., 116 N.C.App. 155, 167 (1994). Even taking

defendants' allegation that the contamination was greater than what was represented to them at the time they purchased the property 23 years ago, defendants have failed to identify in their counterclaim or in their responsive pleading the nature of the "unreasonable interference" with their use and enjoyment of the property.

In reply, plaintiff also incorporates its first Reply, in which it argues that "[d]efendants fail to cite any North Carolina case, and CTS has been unable to find one, supporting a nuisance claim under similar alleged facts . . . ." Reply (#19), at p. 4. The undersigned concurs with plaintiff that there are no reported North Carolina cases concerning the maintenance of an action in nuisance against a prior landowner who allegedly contaminated their own land. The court did, however, find one reported case that is very similar, involving a purchaser of land suing the previous owner for nuisance based on contamination of the land through use of leaking oil tanks. In <u>KFC Western, Inc. v. Meghrig</u>, 23 Cal.App.4th 1167 (Cal.App. 2 Dist.1994), the Court of Appeals of California held, as follows:

> The Meghrigs do not contend the alleged soil contamination does not fall within the statutory definition of nuisance. Instead, the Meghrigs argue KFC cannot state a cause of action for private nuisance because the Meghrigs consented to the use of their own land and there was no invasion of another's interest in the use and enjoyment of the land. In other words, the Meghrigs submit they were entitled to contaminate their own property. The argument fails.
> Under *Newhall Land & Farming Co., supra*, 19 Cal.App.4th at pages 341-345, 23 Cal.Rptr.2d 377, a landowner may state a cause of action for a private continuing nuisance against a previous owner whose

> activity contaminated the property.
>
> In *Newhall* the defendants similarly argued "that, since they were the owners of the property at the time of the contamination, they could not be found liable to themselves for creating a nuisance. Consequently, ... Newhall, as a successor-in-interest, [could not] state a nuisance claim against them arising out of that contamination. According to [the defendants], there cannot be a continuing nuisance where no nuisance existed at the inception of the wrongful condition." ( *Newhall, supra*, 19 Cal.App.4th at p. 344, 23 Cal.Rptr.2d 377.)
>
> *Newhall* found "a fundamental flaw in this argument. Regardless of whether a potential plaintiff existed at the time of the contamination, the fact remains that [defendants'] conduct created a condition on the property which was, and which remains, injurious to health. Once [defendants] sold their interests without disclosing the contamination, other parties became involved who, upon discovery of the contamination, could bring a claim against [defendants] in an attempt to force them to accept responsibility for their creation of a nuisance. [I]n the context of this case, the time of the creation of the nuisance is immaterial with respect to [defendants'] liability." ( *Newhall, supra*, 19 Cal.App.4th at p. 344, 23 Cal.Rptr.2d 377.)
>
> Pursuant to *Newhall's* rationale, the Meghrigs' status as former owners does not immunize them from a nuisance action arising from their activity on the property.

Id., at 1178-1179 (footnote omitted; bracketed material in the original). Thus, some case law under similar (but not identical) circumstances does exist, albeit non-binding. While the California cases appear to involve a failure to disclose the contamination which is not present here, defendants do contend that at the time plaintiff made its disclosure, "it knew, or reasonably should have known, that the contamination was much more widespread." Response (#25), at p. 5. Put another way, while disclosure of the full extent of contamination at the time of sale in 1987 may have started the

clock running at that time, defendants appear to contend that the clock on their nuisance claim did not begin to run until the magnitude of the contamination was revealed.

Assuming that a prior owner's failure to disclose the full extent of contamination could be the basis for a cause of action for nuisance, the issue becomes whether the statute of limitations begins when the lesser contamination is disclosed or when the greater contamination is discovered. For example, if a seller were to reveal in conjunction with a sale of real property that a gallon of gasoline had been spilled in the backyard and the buyer, accepting such risk, proceeds with the purchase, but only later discovers that a tanker load of gasoline had been spilled, then it is arguable that buyer has alleged a fact that could plausibly show that the seller unreasonably interfered with defendants' use and enjoyment of their property, thereby satisfying the definition of nuisance. Because the seller failed to disclose the quantum of the contamination, one might argue that the statute of limitations would not begin to run until the extent of the contamination was revealed. In a similar case from another jurisdiction, the district court held as follows:

> Defendants argue that most of NPWA's common law claims (Counts VII, VIII, IX, XI, XII, XIII, and XV) are untimely and barred by a two-year statute of limitations, because NPWA's Complaint indicates that it became aware of the contamination 25 years ago and the EPA issued its report on the site 18 years ago. (Defs' Memo. of Law, pp. 29-30). NPWA does not dispute the applicability of the two-year statute

of limitations on these claims, but argues that the causes of action did not arise until the EPA issued its 2004 ROD, identifying the responsible parties and the full nature and extent of the contamination, because this was "the time when the plaintiff could have first maintained the action to a successful conclusion." *Kapil v. Association of Pennsylvania State College and University Faculties*, 504 Pa. 92, 470 A.2d 482, 485 (Pa.1983). (Plaintiff's Memo. of Law, p. 42). NPWA also argues that the flow of contamination in this case is ongoing, and thus distinguishable from the authorities cited by Defendants. ( *Id.* at 42-43, 470 A.2d 482).

    It appears to the Court that Defendants' arguments better reflect Pennsylvania law. In *F.P. Woll & Co. v. Fifth and Mitchell Street Corp.*, 1999 WL 79059 *10 (E.D.Pa.1999), the court explained that "[t]he so-called 'discovery rule' tolls the running of a statute of limitations until the plaintiff knows or reasonably should know that he has sustained an injury caused by another party's conduct." The statute of limitations is tolled "only if the person in plaintiff's position exercising reasonable diligence would not have been aware of the salient facts." *Id.* It is clear that "[o]nce any damages are known, the statue begins to run" and a plaintiff's ignorance of "the precise extent of his injuries will not stop the running of the limitations period." *Id.*

North Penn Water Auth. v. Bae Systems, 2005 WL 1715718, *10 -11 (E.D.Pa. July 19, 2005), amended on other grounds, North Penn Water Auth. v. Bae Systems, 2005 WL 2304736 (E.D.Pa. Sept. 16, 2005). Pennsylvania law is not unlike North Carolina law when it comes to tolling a statute of limitation under the discovery rule:

> "In applying the discovery rule, it must be determined when [plaintiff] knew or should have known the cause of action accrued. Under common law, 'when the right of the party is once violated, even in ever so small a degree, the injury ... at once springs into existence and the cause of action is complete.'" *McCarver v. Blythe*, 147 N.C.App. 496, 499, 555 S.E.2d 680, 683 (2001) (*quoting Mast v. Sapp*, 140 N.C. 533, 540, 53 S.E. 350, 352 (1906). Thus, "where plaintiffs clearly know more than three years prior to bringing suit about damages, yet take no legal action ... the fact that further damage is caused does not bring about

a new cause of action." *Robertson v. City of High Point*, 129 N.C.App. 88, 91, 497 S.E.2d 300, 302 (1998) *(citing Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 329 S.E.2d 350 (1985)).

DePalma v. Roman Catholic Diocese of Raleigh, 2004 WL 2793377, *4 (N.C.App. Dec. 7, 2004). Thus, the statute of limitations ran 20 years ago on defendants' counterclaim for nuisance and the statute of repose ran some 13 years ago.

The undersigned must, therefore, recommend, in an abundance of caution, that plaintiff's Motion to Dismiss based on failure to state a cause of action as a matter of law be denied without prejudice[2] insofar as there appears to be some authority for the proposition that a nuisance can be caused by a prior landowner contaminated the land; however, the undersigned will recommend that the counterclaim sounding in nuisance be dismissed as time barred inasmuch as it is patently barred by North Carolina's three-year statute of limitations and ten-year statute of repose, neither of which can be tolled as defendants undisputedly had knowledge of injury to the land at or about the time they purchased the property. "A statute of repose is a substantive limitation, and is a condition precedent to a party's right to maintain a lawsuit." Tipton & Young Constr. Co. Inc. v. Blue Ridge Structure Co., 116 N.C.App. 115, 117 (1994)(citation omitted).

---

[2] The undersigned will makes such recommendation of denial of this aspect of the motion without prejudice inasmuch as the court is relying on a non-binding decision of a sister jurisdiction which the parties have not cited or brief.

# RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that plaintiff's second Motion to Dismiss (#23) be **ALLOWED,** as follows:

(1) that defendants' Counterclaim for Trespass be **DISMISSED** with prejudice for failure to state a claim and because such counterclaim is barred by the three- year statute of limitations and the ten-year statute of repose;

(2) that defendants' Counterclaim for Nuisance be **DISMISSED** with prejudice because such counterclaim is barred by the three- year statute of limitations and the ten-year statute of repose. It is further recommended that the motion to dismiss such claim for failure to state a cause of action under substantive North Carolina law be **DENIED** without prejudice.

## Time for Objections

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same. **Responses to the objections**

**must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <u>reh'g</u> <u>denied</u>, 474 U.S. 1111 (1986); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir.), <u>cert</u>. <u>denied</u>, 467 U.S. 1208 (1984).

                                             Signed: January 26, 2011

                                             Dennis L. Howell
                                             United States Magistrate Judge