# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### 1:10cv156

| | | |
|---|---|---|
| CTS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| | ) | |
| MILLS GAP ROAD ASSOCIATES, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pending before the Court is Defendants' Motion for Partial Summary Judgment [# 54] and Plaintiff's Motion for Summary Judgment [# 57]. Plaintiff brought this action against Defendants asserting claims for breach of contract, declaratory relief, and payment on a promissory note. Defendants move for partial summary judgment on two of Plaintiff's claims. Plaintiff moves for summary judgment on all of its claims. The Court **RECOMMENDS** that the District Court **DENY** the motions [# 54 & # 57].

## I.      Background

### A.      The Discovery of Contamination at the Mills Gap Road Site and the Subsequent Agreements between the Parties

Plaintiff is an Indiana Corporation that previously owned in excess of fifty

acres located on Mills Gap Road in North Carolina. (Pl.'s Am. Compl. ¶ 2; Defs.' Am. Answer ¶ 2; Powell Aff. ¶ 2, July 22, 2012; Ahlemann Aff. Ex. A-1, Jul. 18, 2012.) CTS of Asheville, Inc. operated a manufacturing facility on approximately nine acres of this parcel. (Ahlemann Aff. Ex. A-1; Ahlemann Dep. 141:12-142:7, May 23, 2012.)

Defendant Mills Gap Road Associates ("MGRA") is a general partnership that was formed in 1987 to purchase fifty-three acres of the property located on Mills Gap Road from Plaintiff. (Pl.'s Am. Compl. ¶ 3; Defs.' Am. Answer ¶ 3; Powell Aff. ¶ 2.) Defendant MGRA then sold approximately forty-four acres of the property in 1997, retaining the nine acres containing the site of the former manufacturing facility. (Powell Aff. ¶ 2; Ahlemann Dep. 11:2-11.)

At some point, there was a release of hazardous substances from this nine acre site, which migrated beyond the boundaries of the site. (Ahlemann Dep. 142:6-21.) As a result of this contamination, Plaintiff and Defendant MGRA entered into an Administrative Order on Consent ("Administrative Order") with the United States Environmental Protection Agency ("EPA"). (Ahlemann Aff. ¶ 3; Pl.'s Am. Compl. ¶ 14; Defs.' Am. Answer ¶ 14.) The Administrative Order provided for the performance of a removal action by Plaintiff and Defendant MGRA and the reimbursement of response costs to the United States in connection

with the clean up of the Site, which is defined as the "Mills Gap Road Groundwater Contamination Site, encompassing approximately nine (9) acres, of which a portion has been enclosed and used for industrial purposes, located on Mills Gap Road near Skyland, Buncombe County, North Carolina." (Ahlemann Aff. Ex. A-1, at pp. 1, 4.) Pursuant to the terms of the Administrative Order, Plaintiff and Defendant MGRA agreed to perform the work as set forth in the Administrative Order and the Scope of Work. (Ahlemann Aff. Ex. A-1, at pp. 8.)

Shortly after the execution of the Administrative Order, Plaintiff and Defendant MGRA entered into the Mills Gap Road Site Participation Agreement ("Site Participation Agreement") with an effective date of January 22, 2004. (Ahlemann Aff. Ex. A-2.) The stated purpose of the Site Participation Agreement was to allocate the "Shared Costs" and establish the procedures for implementing and performing the activities Plaintiff and Defendant MGRA are required to perform under the Administrative Order. (Ahlemann Aff. Ex. A-1, at p. 4; Ahlemann Aff. Ex. A-2, at §§ I.B.1, II.A.) The Site Participation Agreement defines "Shared Costs" as:

> A. **Shared Costs.** "Shared Costs" shall mean all costs and expenses which are incurred by the Parties, either directly or through a contractor, relating to the Site, whether for purposes of implementing the Work required by the Orders or as otherwise agreed to by the Parties. Shared Costs shall include without limitation, costs of equipment, materials/supplies, sampling

laboratory work, contractor charges, charges associated with overseeing the Work that are incurred or claimed by a government authority, Future Response Costs (including those oversight costs that the Parties agree are substantiated and are to be reimbursed to the EPA in connection with the Order, provided, however, that all monies provided by the Parties pursuant to this Agreement shall be used solely for the purposes of this Agreement and shall not be considered as payment for any fines, penalties, or monetary sanctions. Stipulated penalties assessed by EPA, if any, shall be a Shared Cost, except to the extent that any such penalties are assessed against an individual Party due to that Party's failure to pay in full an assessment pursuant to this Agreement. "Shared Costs" shall not include any Past Response Costs, including any costs and expenses incurred by an governmental authority, including the EPA and/or the Coast Guard, through May 13, 2003.

(Ahlemann Aff. Ex. A-2, at § III.A.) Plaintiff and Defendant MGRA agreed to allocate these Shared Costs between themselves, with Plaintiff paying 75 percent of the Shared Costs and Defendant MGRA paying 25 percent. (Ahlemann Aff. Ex. A-2, at § III.B.1.) Plaintiff, however, agreed to handle the payments of all the invoices submitted by the contractors. (Ahlemann Aff. Ex. A-2, at § III.B.2.)

In association with its agreement to pay a portion of the Shared Costs, Defendant MGRA also agreed to execute a Promissary Note payable to Plaintiff for an amount equal to 25 percent of the costs of completion of the Work required by the Administrative Order. (Ahlemann Aff. Ex. A-2, at § III.B.1.) The note was to be secured by a first lien Deed of Trust on the Site, and the Deed of Trust would remain in effect until Defendant MGRA satisfied four conditions set forth in the

Site Participation Agreement.  (Ahlemann Aff. Ex. A-2, at § III.B.2.)  Once

Defendant MGRA satisfied these conditions, Plaintiff would mark the Promissory

Note paid and satisfied and cancel the Deed of Trust.  (Ahlemann Aff. Ex. A-2, at

§ III.B.3.)  Pursuant to the Site Participation Agreement, Defendant MGRA

executed a Promissory Note that was secured by a Deed of Trust on the Site.

(Greenberg Dep. 66:09-67:06, May 25, 2012; Ahlemann Aff. ¶ 9; Ahlemann Aff.

Ex. A-3; Ahlemann Aff. Ex. A-4.)   The Deed of Trust contained the following

provision:

> 4.     WASTE.  The Grantor covenants that he will keep the Premises
> herein conveyed in as good order, repair and condition as they are
> now, reasonable wear and tear excepted, and will comply with all
> governmental requirements respecting the Premises or their use,
> and that he will not commit or permit any waste.

(Ahlemann Aff. Ex. A-4, at p. 2.)

Pertinent to this dispute is also an indemnity provision the parties included

in the Site Participation Agreement in **Section XIII. ADDITIONAL**

**UNDERTAKING BY CTS AND MGRA**.  (Ahlemann Aff. Ex. A-2.)  This

provision provides that:

> **D.**    MGRA agrees to indemnify, defend and hold harmless CTS from
> and against any liability which may arise from the Site (other than
> the Work required pursuant to the Order and for non-
> governmental third-party claims for bodily injury or personal
> injury), including, without limitation, any liability which may
> arise as a result of MGRA's performance or non-performance of

-5-

the obligations set forth in the Order, this Agreement or the Brownfield's Agreement. CTS agrees to defend, indemnify and hold harmless MGRA from and against any claim by a third-party for injury to person or non-MGRA property arising out of the Work performed pursuant to the Order.

(Ahlemann Aff. Ex. A-2, at § XIII.D.)

## B.     The Costs Incurred by Plaintiff other than the Shared Costs after the Entry of the Site Participation Agreement

On November 27, 2007, the North Carolina Department of Environment and Natural Resources (the "Department") demanded in a letter that Plaintiff conduct a site assessment as part of the Site remediation. (Pl.'s Am. Compl. ¶ 19; Def.'s Am. Answer ¶ 19; Ahlemann Dep. Ex. 33.)   Although Plaintiff commenced the assessment after receipt of the letter from the Department, Plaintiff never completed the assessment as requested. (Ahlemann Dep. 156:13-158:3.)  Plaintiff then demanded that Defendant MGRA indemnify it against any liability stemming from the demands of the Department. (Pl.'s Am. Compl. ¶¶ 20, 22 ; Def.'s Am. Answer ¶¶ 20, 22.)  Defendant MGRA and its partners rejected Plaintiff's demand for defense and indemnification. (Pl.'s Am. Compl. ¶¶ 21-22; Def.'s Am. Answer ¶¶ 21-22.)  Plaintiff incurred costs in responding to the Department. (Ahlemann Aff. ¶ 34.)

In February 2011, a group of individuals brought suit against CTS

Corporation in the United States District Court for the Western District of North Carolina, Asheville Division. (Pl.'s Am. Compl. ¶ 24; Def.'s Am. Answer ¶ 24; Ahlemann Aff. ¶ 35.) The complaint sought to recover damages against CTS Corporation under a theory of nuisance for the alleged contamination of the plaintiffs' properties from chemicals that migrated from the Site. (Ahlemann Aff. Ex. A-18.) Plaintiff incurred costs defending against this lawsuit. (Ahlemann Aff. ¶ 35.)

In March 2011, the EPA proposed including the CTS of Asheville, Inc. site for inclusion on the National Priorities Lists pursuant to CERCLA. (Pl.'s Am. Compl. ¶ 25, Defs.' Am. Answer ¶ 25.) Plaintiff incurred costs associated with the proposed inclusion. (Ahlemann Dep. 134:5-10.)

The EPA also requested that Plaintiff perform additional remediation work related to the ground water and drinking water. (Pl.'s Am. Compl. ¶ 27; Def.'s Am. Answer ¶ 27; Ahlemann Aff. Ex. A-19.) This request related to the migration of contamination beyond the original boundaries of the Site. (Ahlemann Aff. Ex. A-19, at p. 1.) The EPA also demanded reimbursement from Plaintiff of its costs incurred to date. (Ahlemann Aff. Ex. A-19, at p. 3.) Plaintiff and the EPA subsequently entered into an Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasability Study (the "Administrative

Settlement Agreement") addressing the contamination.  (Ahlemann Aff. Ex. A-20.)

Plaintiff has incurred costs in addressing the requirements of the Administrative

Settlement Agreement.  (Ahlemann Aff. ¶ 39.)

### C.     The Condemnation of the Building Located on the Site

Located on the Site was a single-story building, approximately 76,000 to

80,000 square feet in size.  (Ahlemann Aff. ¶ 23; Greenberg Dep. 90:3-11, May 25,

2012.)   This building was owned by Defendant MGRA.  (Ahlemann Aff. Ex. A-

12.)  In August 2011, the Buncombe County Building Inspector posted a notice at

235 Mills Gap Road stating that the building was condemned.  (Ahlemann Aff. Ex.

A-11; Pl.'s Am. Compl. ¶ 26; Defs.' Am. Answer ¶ 26.)   The notice also stated

that the building was unfit for human habitation and that the use or occupation of

the building was prohibited.  (Ahlemann Aff. Ex. A-11.)  Finally, the notice stated

that the building was unsafe and must be immediately boarded, repaired, or

removed.  (Ahlemann Aff. Ex. A-11.)   A hearing was subsequently held on the

condemnation of the building.   (Ahlemann Aff. Ex. A-9.)  Defendant MGRA

submitted a written statement for consideration by Buncombe County in an effort

to convince Buncombe County not to proceed with condemnation of the building.

(Ahlemann Aff. Ex. A-12.)  Ultimately, however, the partners of Defendant

MGRA decided that the building was too far gone and opted not to make any

repairs of the building that would have prevented it's demolition. (Greenberg Dep. 86:4-16; Powell Dep. 70:8-71:3; Pl.'s Am. Compl. ¶ 30; Defs.' Am. Answer ¶ 30.) Buncombe County demolished the property in December 2011. (Ahlemann Aff. ¶ 30; Ahlemann Aff. Ex. A-14.)

## D.    The Claims Asserted in the Amended Complaint

Subsequently, Plaintiff brought this action against Defendants asserting claims for breach of contract, declaratory relief, and payment on the promissory note. (Pl.'s Am. Compl. ¶¶ 32-50.) In Count One, Plaintiff contends that Defendants breached the Site Participation Agreement by failing to indemnify it for the costs associated with defending against the Walburger legal action, the proposed inclusion on the National Priorities List, and the EPA's 2011 request to perform additional remediation work related to the ground water and drinking water. (Pl.'s Am. Compl. ¶ 35.) In addition, Plaintiff contends that Defendants have breached the Site Participation Agreement by failing to pay 25 percent of the Shared Costs occurred to date. Count Two seeks a declaratory judgment from the Court declaring that Defendants are responsible for complying with all future obligations under the Site Participation Agreement, including reimbursing Plaintiff for all future costs incurred in performing the work required by the Administrative Order, reimbursing the EPA for its oversight costs, addressing the Waldburger

action, addressing the proposed inclusion on the National Priorities List, and addressing any future costs related to the EPA's 2011 request to perform additional remediation work related to the ground water and drinking water. (Pl.'s Am. Compl. ¶ 42.) Count Three seeks payment under the Promissory Note as a result of Defendants' alleged default under the Waste provision of the Deed of Trust. (Pl.'s Am. Compl. ¶ 47.) Count Four seeks a declaratory judgment from the Court declaring that Defendants have breached the Promissory Note due to a default under the Waste provision of the Deed of Trust and are obligated to reimburse Plaintiff 25 percent of all future Shared Costs. (Pl.'s Am. Compl. ¶ 50.)

Defendants now move for summary judgment on Counts One and Two to the extent that Plaintiff seeks relief under the indemnity provision. Plaintiff moves for summary judgment on all of its claims. Both motions are now properly before the Court for a Memorandum and Recommendation to the District Court.

## II.   Legal Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of some alleged factual dispute between the parties will not defeat a motion for summary. Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510 (1986); <u>Bouchat v. Baltimore Ravens Football Club, Inc.</u>, 346 F.3d 514, 519 (4th Cir. 2003). Rather, there must be a genuine issue of material fact. <u>Id.</u> "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." <u>Anderson</u>, 477 U.S. at 248, 106 S. Ct. 2510. Finally, in deciding a motion for summary judgment, the Court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). The Court, however, may consider the other materials in the record. <u>Id.</u>

### III.    Analysis

### A.    Plaintiff's Briefs Exceed the Page Limit Allowed by the Local Rules

The Local Rules provide that the page limit for any brief is 25 pages. LCvR7.1(D). Both Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment in Part [# 63] and Plaintiff's Memorandum of Law in Support of its Motion for Summary Judgment [# 58] are in excess of 25 pages. Plaintiff did not file a motion requesting leave to file briefs in excess of the limits allowed by the Local Rules. Accordingly, the Court **STRIKES** the surplus pages

of both briefs.[1]

**B.    Defendants have not Breached the Site Participation Agreement by Failing to Pay the Shared Costs Incurred to Date**

In order to prevail on its breach of contract claim under North Carolina law Plaintiff must demonstrate the existence of a valid contract and a breach of the terms of the contract.  Woolard v. Davenport, 601 S.E.2d 319, 322 (N.C. Ct. App. 2004); Poor v. Hill, 530 S.E.2d 838, 843 (N.C. Ct. App. 2000); Shell Trademark Mgmt. BV & Motiva Enters., LLC v. Ray Thomas Petroleum Co., Inc., 642 F. Supp. 2d 493, 503 (W.D.N.C. 2009) (Conrad, C.J.).  Here, there is no dispute that a valid and enforceable contract exists between the parties.  The question for the Court is whether Defendant MGRA has breached the express terms of the contract related to its obligation to pay a portion of the costs for implementing the work in the Administrative Order.

Pursuant to the terms of the Site Participation Agreement, Defendant MGRA agreed to be responsible for 25 percent of the Shared Costs, as that term is defined in Section III.A.  (Ahlemann Aff. Ex. A-2, at § III.B.1.)  Rather than divide the Shared Costs as they arose during the completion of the Work required by the

---

[1] In addition, the Court notes that the actual Motion for Summary Judgment [# 57] filed by Plaintiff is more of a supplemental brief than an actual motion.  A motion should be a short and plain statement setting forth the relief requested; it is not an opportunity to circumvent the Court's page limits and offer supplemental argument to the Court.

Administrative Order, the parties agreed that Plaintiff would be responsible for paying the contractors to perform the Work.  (Ahlemann Aff. Ex. A-2, at § III.B.2.)  In return, Defendant MGRA executed a Promissory Note payable to Plaintiff for an amount equal to its share of the total costs for completing the Work required by the Administrative Order.  (Ahlemann Aff. Ex. A-2, at § III.B.2; Ahlemann Aff. Ex. A-3.)  The Promissory Note was secured by a Deed of Trust on the Site.  (Ahlemann Aff. Ex. A-2, at § III.B.2; Ahlemann Aff. Ex. A-4.)  In short, Defendant MGRA put up the Site as collateral in case of a default on its obligation to reimburse Plaintiff for 25 percent of the total Shared Costs upon the completion of all the Work required under the Administrative Order.

The Site Participation Agreement, however, also contained a provision that allowed Defendant MGRA to discharge its obligation to contribute 25 percent of the Shared Costs by satisfying four requirements.   (Ahlemann Aff. Ex. A-2, at §§ III.B.2-3; Ahlemann Aff. Ex. A-3.)  These requirements included Defendant MGRA entering into a Brownfields Agreement for the Site with the Department, completing all requirements of the Brownfields Agreement, obtaining a covenant not to sue from the Department for the Site, and completing its obligations under the Administrative Order.  (Ahlemann Aff. Ex. A-2, at § III.B.2.)  Upon the satisfaction of these requirements, Plaintiff agreed to mark the Promissory Note as

paid and satisfied and cancel the Deed of Trust in the public record. (Ahlemann Aff. Ex. A-2, at §§ III.B.3; Ahlemann Aff. Ex. A-3.) Accordingly, if Defendant MGRA satisfied each of these conditions, no amount was due and payable under the promissory note. (Ahlemann Aff. Ex. A-3.) If, however, Defendant MGRA fails to satisfy these requirements, then Defendant MGRA is obligated to pay 25 percent of the Shared Costs. (Ahlemann Aff. Ex. A-3.)

The Site Participation Agreement also contains a time frame for Defendant MGRA to satisfy these requirements. Section XIII.B, which is referenced in Section III.B.2, provides that Defendant MGRA shall make the necessary submission to enter the Brownfields Agreement for the Site with the Department upon the completion of the Work by the parties under the Administrative Order. (Ahlemann Aff. Ex. A-2, at § XIII.B.) Thus, under the express terms of the contract, Defendant has until a reasonable time period after the parties complete all the Work required under the Administrative Order to even begin the process of entering into a Brownfields Agreement with the Department and satisfying the conditions under the Site Participation Agreement for the discharge of its obligation to pay 25 percent of the Shared Costs.[2]

---

[2] The Court notes that the Site Participation Agreement does not state how long after the completion of the Work Defendant MGRA has to comply with the conditions set forth in the Site Participation Agreement. Accordingly, the act must be performed within a reasonable amount of time after the completion of the Work. See Int'l Minerals & Metals Corp. v. Weinstein, 73

Despite these express provisions of the Site Participation Agreement, Plaintiff contends that Defendant MGRA has breached the agreement because it has not complied with the conditions for discharging its obligation to pay the Shared Costs and is not currently able to do so as a result of the inclusion of the CTS of Asheville, Inc. site on the National Priorities Lists.  In short, Plaintiff wants this Court to accelerate the terms of the Site Participation Agreement and make Defendant MGRA's portion of the Shared Costs immediately due and payable.

Plaintiff, however, is entitled to no such ruling.  As a threshold matter, Defendant MGRA has not breached the Site Participation Agreement as alleged in the Amended Complaint.  Defendant MGRA is not obligated to even begin the process of entering into a Brownfields Agreement with the Department and satisfying the related conditions contained in Section III.B.2 until after Defendant MGRA and Plaintiff have completed the Work required under the Administrative Order.  It is undisputed that this Work is still ongoing.  (Ahlemann Dep. 89:12-18.)

Thus, no breach could possibly have occurred.

Morever, the fact that the CTS of Asheville, Inc. site was included on the National Priorities Lists does not require a different result.  Although N.C.G.S. §

---

S.E.2d 472, 474 (N.C. 1952) (holding that where no time for complying with the terms of a contract is stated in the contract, then the law provides that the party must perform the act within a reasonable time period); Digh v. Nationwide Mut. Fire Ins. Co., 654 S.E.2d 37, 39 (N.C. Ct. App. 2007).

130A-310.31(b)(3) excludes any site listed on the National Priorities List from the definition of a brownfields property or brownfields site, inclusion of the National Priorities List is not necessarily permanent, and sites may be removed from the National Priorities List.  See e.g. 40 C.F.R. § 300.425(e); (Ahlemann Dep. 164:1-4).  Accordingly, whether Defendant MGRA will ultimately be able to satisfy the conditions set forth in the Site Participation Agreement and discharge its portion of the Shared Costs by entering into a Brownfields Agreement for the Site with the Department, completing all requirements of the Brownfields Agreement, and obtaining a covenant not to sue from the Department for the Site is entirely speculative at this time.  Plaintiff's civil action is premature.  The Court, therefore, **RECOMMENDS** that the District Court **DENY** Plaintiff's Motion for Summary Judgment [# 57] as to Counts One and Two as to the issue of whether Defendants breached the Site Participation Agreement by failing to pay its portion of the Shared Costs that Plaintiff has paid to date and whether Plaintiff is entitled to a declaratory judgment that Defendants are obligated to pay additional Shared Costs as they arise in the future.[3]

---

[3] Defendants did not move for summary judgment on these claims.  The Court notes that had they done so, the Court would have recommended that the District Court grant such a motion as there is no question of material fact that Plaintiff is not entitled to the relief requested in the Amended Complaint as to these claims.

## C. The Indemnity Provision Contained in Section XIII.D is Ambiguous

Plaintiff also contends that Defendant MGRA has breached the Site Participation Agreement by failing to indemnify it for various costs incurred. Specifically, Plaintiff contends that Section XIII.D requires Defendant MGRA to indemnify Plaintiff for a variety of costs it has incurred, including addressing the Waldburger action, addressing the proposed inclusion on the National Priorities List, and addressing any future costs related to the EPA's 2011 request to perform additional remediation work related to the ground water and drinking water. Defendants contend that Section XIII.D does not require Defendant MGRA to indemnify Plaintiff for these costs. Both parties move for summary judgment on this claim.

The interpretation of an indemnity provision is subject to the same rules of contract interpretation that ordinarily apply in North Carolina. See Schenkel & Shultz, Inc. v. Hermon F. Fox & Assocs., P.C., 658 S.E.2d 918, 921 (N.C. 2008); Dixie Container Corp. v. Dale, 160 S.E.2d 708, 711 (N.C. 1968). The primary aspect of interpreting the language of a contract is to ascertain and give effect to the parties' intention when the contract was executed. Schultz, 658 S.E.2d at 918; Glover v. First Union Nat'l Bank of N.C., 428 S.E.2d 206, 209 (N.C. Ct. App. 1993); Shell Trademark Mgmt. BV & Motiva Enters., LLC v. Ray Thomas

Petroleum Co., Inc., 642 F. Supp. 2d 493, 508 (W.D.N.C. 2009) (Conrad, C.J.).  "If a contract is plain and unambiguous on its face the court may interpret it as a matter of law, but where it is ambiguous and the intention of the parties is unclear, interpretation of the contract is for the jury." Glover, 428 S.E.2d at 456; see also Schenkel & Shultz, 658 S.E.2d at 921. "An ambiguity exists in a contract when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations." Register v. White, 599 S.E.2d 549, 553 (N.C. 2004); see also Schenkel & Shultz, 658 S.E.2d at 921.

In attempting to ascertain the intention of the parties and determine whether a contract is ambiguous, the Court must construe the contract as a whole and interpret the indemnity provision at issue in relation to all the other provisions in the contract. Schenkel & Shultz, 658 S.E.2d at 921; Dale, 160 S.E.2d at 711. Courts look to "the language used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time." Peaseley v. Virginia Iron, Coals and Coke Co., 194 S.E.2d 133, 142 (N.C. 1973).  In interpreting a specific provision of a contract, an interpretation that gives reasonable meaning to all parts of a contract is preferred over one that renders a portion of the contract meaningless or superfluous. Int'l Paper Co. v. Corporex Constructors, Inc., 385 S.E.2d 553, 555-56 (N.C. Ct. App. 1989).

At issue here is Section XIII.D of the Site Participation Agreement, which states:

> MGRA agrees to indemnify, defend and hold harmless CTS from and against any liability which may arise from the Site (other than the Work required pursuant to the Order and for non-governmental third-party claims for bodily injury or personal injury), including, without limitation, any liability which may arise as a result of MGRA's performance or non-performance of the obligations set forth in the Order, this Agreement or the Brownfield's Agreement. CTS agrees to defend, indemnify and hold harmless MGRA from and against any claim by a third-party for injury to person or non-MGRA property arising out of the Work performed pursuant to the Order.

(Ahlemann Aff. Ex. A-2, at § XIII.D.) Specifically, the parties dispute the meaning of the phrase "may arise from the Site." Plaintiff contends that this phrase obligates Defendant MGRA to indemnify Plaintiff for essentially any future cost that is traceable to the hazardous substances previously located or released on the Site, as well as the environmental contamination resulting from the migration of those substances from the Site. In short, Plaintiff contends that this provision essentially allowed it to wash its hands of any future liability stemming from the environmental contamination at the Site with the exception of the costs it specifically agreed to incur in the Site Participation Agreement. In contrast, Defendants contend that the indemnity provision only applies to liabilities that are proximately caused by Defendant MGRA's nine acres of real property itself, and the provision does not extend to liabilities that proximately result from the

hazardous substances that were previously released on or around the nine acre site.

Both parties, however, overstate the clarity and unambiguous nature of this provision of the Site Participation Agreement. The Court has read the Site Participation Agreement numerous times and cannot say that the language contained in Section XIII.D is plain and unambiguous on its face, such that the Court may interpret the contract as a matter of law. See Glover, 428 S.E.2d at 209. Both parties offer interpretations of Section XIII.D that are fair and reasonable constructions of the indemnity provision. Accordingly, the Court finds that the scope and intended meaning of the phrase "may arise from the Site" is uncertain and capable of several reasonable interpretations and, thus, is ambiguous. See White, 599 S.E.2d at 553.

Although the Court finds that Defendants' interpretation seems to be the most harmonious interpretation of the provision with the Site Participation Agreement as a whole, the Court cannot say as a matter of law that the parties intended the indemnity provision to apply only to liabilities proximately caused by Defendant MGRA's nine acres of real property itself. While the purpose of the Site Participation Agreement, as well as the inclusion of the Reservation of Rights, supports Defendants' more narrow interpretation of the scope of the indemnity provision, Plaintiff is correct that the specific words used in the indemnity

provision could be reasonably read to encompass a more expansive scope.

Accordingly, the Court finds that a question of material fact exists as to whether

Defendants breached the Site Participation Agreement by failing to indemnify

Plaintiff for the various costs it has expended related to the environmental

contamination at the Site and the contamination migrating from the Site. The

Court, therefore, **RECOMMENDS** that the District Court **DENY** Defendants'

Motion for Summary Judgment [# 54] and **DENY** Plaintiff's Motion for Summary

Judgment as to its claim for breach of contract and for declaratory relief as to the

indemnity provision.

### D.    Defendant MGRA has Defaulted on the Deed of Trust

Defendant MGRA and Plaintiff entered into a North Carolina Deed of Trust

on January 22, 2004. (Ahlemann Aff. Ex. A-4.) This Deed of Trust was given as

security for Defendant MGRA's obligations under the Site Participation

Agreement. (Ahlemann Aff. Ex. A-4, at p. 1.)    The Deed of Trust contained the

following provision:

> 4.    WASTE.  The Grantor covenants that he will keep the Premises
> herein conveyed in as good order, repair and condition as they are
> now, reasonable wear and tear excepted, and will comply with all
> governmental requirements respecting the Premises or their use,
> and that he will not commit or permit any waste.

(Ahlemann Aff. Ex. A-4, at p. 2.)

The undisputed evidence in the record establishes that Defendant MGRA has defaulted on the Deed of Trust by failing to comply with Section 4 of the Deed of Trust. It is undisputed that on January 22, 2004, when the parties entered into the Deed of Trust, that the Site contained an approximately 76,000 to 80,000 square foot building. Up until 2000 or 2001, Defendant MGRA leased the building for various uses, including storage. (Greenberg Dep. 42:5-47:21.) After the parties entered into the Deed of Trust, however, Defendants performed no work at the property other than cut the grass, made no repairs to the building, and conducted no maintenance to the building. (Greenberg Dep. 83:10-22.) Subsequently, the partners of Defendant MGRA decided not to make any repairs of the building that would prevent its demolition, instead agreeing to voluntarily allow Buncombe County to destroy the building in 2011. (Greenberg Dep. 86:10-16.)

There is no question of material fact that Defendants failed to keep the premises is as good of order, repair, and condition as the premises were in when the parties entered into the agreement in 2004. Even if Defendants are correct that the building was old and in poor or bad shape in 2004 (Powell Dep. 65:25; Greenberg Dep. 83:18-19), a building did in fact exist on the property in 2004, and Defendants admit to making no repairs or maintenance on the property from 2004 forward. In addition, Defendants admit that they consented to the complete

demolition of the building by Buncombe Country.  The building did not collapse on its own as a result of reasonable wear and tear over the period from 2004 until 2011.  By failing to make any repairs or maintenance, and by allowing Buncombe County to demolish the building, Defendants breached the plain terms of the Deed of Trust.   At a bare minimum, the Deed of Trust required Defendant MGRA to keep the building intact and standing, as it was in 2004.   The fact that the building may have had little value when it was demolished in 2011 (see e.g. Powell Dep. 65:25; Greenberg Dep. 88:25-89:5) does not change this fact.  Accordingly, the Court finds that Defendants have defaulted on the Deed of Trust.

Plaintiff also notified Defendant MGRA of its default under the terms of the Deed of Trust and demanded that Defendant MGRA cure the default within ten days.  (Ahlemann Aff. Ex. A-10.)  Defendant MGRA, however, failed to cure the default and allowed the building to be demolished.  (Greenberg Dep. 86:10-16.) As a result of the default on the Deed of Trust and Defendant MGRA's failure to cure the default within ten days, Plaintiff may request that the Trustee sell the property at public auction.  (Ahlemann Aff. Ex. A-4, at pp. 1-2.)   It does not appear, however, that the Trustee has pursued the foreclosure of the property as provided for in the Deed of Trust.

Instead, Plaintiff seeks a judgment from the Court finding Defendants jointly

and severally liable for 25 percent of Plaintiff's total Shared Costs to date, plus interest and attorneys' fees. (Pl.'s Am. Compl. ¶ 47.) In addition, Plaintiff seeks a declaratory judgment that Defendants are jointly and severally liable for 25 percent of all future shared costs as they are paid. (Pl.'s Am. Compl. ¶¶ 49-50.) Although the Promissory Note states that Plaintiff may declare the remainder of the principal sum immediately due and payable (Ahlemann Aff. Ex. A-3), it is unclear to the Court from the terms of the Site Participation Agreement whether any such principal sum is currently due or whether it will only become due and payable upon the completion of all the Work required by the Administrative Order. The Court finds that there is a question of material fact as to whether any principal sum is due until after the completion of all the Work as set forth in the Site Participation Agreement. Accordingly, while the Court finds that there is no question of material fact as to whether Defendant MGRA is in default of the terms of the Deed of Trust, the Court cannot recommend that the Court enter the judgment requested by Plaintiff in Counts Three and Four at this time. The Court, therefore, **RECOMMENDS** that the District Court **DENY** Plaintiff's Motion for Summary Judgment [# 57] as to Counts Three and Four.

## IV.  Conclusion

The Court **RECOMMENDS** that the District Court **DENY** the motions [# 54 & # 57].

Signed: November 15, 2012

Dennis L. Howell
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(c), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).